## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Antonio Seenyur,                                    Civil No. 14-4250 (MJD/BRT)

      Plaintiff,

v.

                                                      **REPORT AND**
Steve Hammer, Warden, MCF-Rush City;        **RECOMMENDATION**
Steve Hout, Director of SOTP, Rush City; and
Jennifer Lynne Coolidge, SOTP Program
Director, Rush City;

      Defendants.

---

     This Court previously issued an Order requiring Plaintiff to provide a new application to

proceed *in forma pauperis* ("IFP") and to pay an initial filing fee. (Doc. No. 6.) Plaintiff

complied with that Order by paying the initial filing fee and submitting a proper IFP application,

which includes prison trust account statements. (Doc. Nos. 8, 9.) Because Plaintiff seeks IFP

status and because he is a prisoner seeking redress from a governmental entity, officer, or

employee of a governmental entity in this action, his Complaint is subject to initial screening to

determine whether the Complaint, or any portion of it, is frivolous, malicious, or fails to state a

claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); 28 U.S.C § 1915A(b).

When determining whether a plaintiff has failed to state a claim upon which relief can be granted

under these screening statutes, courts use the Rule 12(b)(6) standard of review. *Jones v. Bock*,

549 U.S. 199, 215 (2007); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996). To survive

dismissal for failure to state a claim, the plaintiff must file a complaint that contains "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

1

As discussed below, this Court recommends that Plaintiff's claims against Defendants Steve Hammer and Steve Hout be summarily dismissed for failure to state a claim. Plaintiff's Motion to Accept and Consider Defendants Steve Hammer and Steve Hout (Doc. No. 7) should also be denied based for the reasons stated below. This Court also recommends that Plaintiff's claim concerning the confiscation of a piece of prison mail he sent to another inmate should be dismissed because Plaintiff alleges no facts that would attribute the confiscation of that mail to any Defendant in this action.

## FACTS

In his Complaint, Plaintiff names three Defendants: (1) Steve Hammer ("Warden Hammer"), Warden of the Minnesota Correctional Facility located in Rush City ("MCF-Rush City"); (2) Steve Hout ("Director Hout"), the Director of Minnesota's Sex Offender Treatment Program; and (3) Jennifer Lynne Coolidge ("Director Coolidge"), the Director of Minnesota's Sex Offender Treatment Program at MCF-Rush City. (Doc. No. 1, Compl. 1, 4; *id.* at 8, ¶¶ 4–6.) Plaintiff brings his claims against these individuals for damages, under 42 U.S.C. § 1983, for violations of his constitutional rights. (Compl. 7, ¶ 1.) He also seeks injunctive relief against Director Coolidge, ordering her "to cease unlawful retaliation, [and] misusing and abusing her professional authority." (Compl. 16.)

Plaintiff alleges that when he asked certain questions and refused to speak out against another participant in a group therapy session, Director Coolidge retaliated against him by fabricating a disciplinary report and causing him to be placed in solitary confinement or segregated disciplinary detention. (Compl. 9, ¶¶ 10–15.) Plaintiff then pursued grievances against Director Coolidge relating to the allegedly falsified disciplinary report. (*Id.* at 10, ¶ 16.) As a result, Plaintiff asserts that he was transferred from MCF-Rush City to the Minnesota State

Prison located in Stillwater. (*Id.* ¶ 17.) Once at the Stillwater prison, he pursued grievances with the Minnesota Board of Behavioral Health and Therapy against Director Coolidge. (*Id.* ¶¶ 18–19; Doc. No. 2-1, Exs. C–E.) Further, Plaintiff asserts that Director Coolidge violated his rights by treating him differently than she treated other Caucasian inmates, whom he identifies by name. (Compl. 13, ¶ 31; *id.* at 14, ¶ 34; Doc. No. 5 at 24.)[1]

Ultimately, Plaintiff filed a grievance with Director Hout.  (Compl. 10, ¶ 20; Doc. No. 2-1, Ex. G.) In the grievance he sent to Director Hout, Plaintiff complained that Director Coolidge had discriminated against him on the basis of race. (Doc. No. 2-1, Ex. G at 2.) Plaintiff alleges that Director Hout never responded to the grievance. (Compl. 12, ¶ 28; *id.* at 14, ¶ 33.)

Plaintiff also asserts that he attempted to send a letter to another inmate in the Sex Offender Treatment Program, in which he explained that Director Coolidge had him thrown out of the group therapy session because she could not deal with "African American culture," and had him thrown in "seg [based on a] bogus report saying [that Plaintiff] was defiant in [his] behavior[,]" but "staff" intercepted the letter and it never reached its intended recipient. (Compl. 10, ¶ 21; Doc. No. 2-1, Exs. H & I.)

Plaintiff asserts that he:

> fell victim to the misuse and abuse of power and authority of defendant Jennifer Lynne Coolidge and was punished physically by being thrown in solitary confinement. Plaintiff has been irreparably injured by defendant Jennifer Lynne Coolidge's misuse and abuse of authority which has caused plaintiff Seenyur emotional distress, pain, suffering, and psychological injury.

---

[1]    Because Plaintiff is proceeding *pro se*, this Court has construed Plaintiff's submissions liberally. In his Complaint, Plaintiff references several exhibits that he attached to a Memorandum in support of his Complaint. (Compl. 9–11, ¶¶ 15–22; Doc. No. 2-1, Exs. A–I.) With respect to his claims of racially discriminatory conduct by Director Coolidge, this Court notes that Exhibit E is missing page "4 of 5" in Doc. No. 2-1.  However, Doc. No. 5, which appears to be identical to the submission at Doc. No. 2-1, includes the missing page. (Doc. No. 5 at 24.)

(Compl. 11, ¶ 24.)

Finally, Plaintiff alleges that Warden Hammer "is legally responsible for the operation of the prison and the welfare of all the inmates of that prison[, and] [b]y disregarding the grievances attempted by plaintiff Seenyur and witnessing defendant Jennifer Coolidge's illegal actions, conduct and behavior," he violated Plaintiff's constitutional rights. (Compl. 13–14, ¶ 32; *see also id.* at 15, ¶ 35.)

## I.      Claims Against Warden Hammer

In its November 24, 2014 Order requiring Plaintiff to file a new IFP application and pay the partial initial filing fee, the Court explained that the claims against Warden Hammer were unlikely to survive the initial screening because Plaintiff had failed to sufficiently allege Warden Hammer's personal involvement in the deprivation of any constitutional right. (Doc. No. 6 at 4 n.3.) Here, this Court concludes that the claims against Warden Hammer should be dismissed for failure to state a claim on which relief can be granted.

The allegations against Warden Hammer amount to little more than statements that he should be liable for Director Coolidge's actions and the seizure of a piece of mail Plaintiff sent to another inmate in a different prison. But the Complaint contains no factual averments that tie Warden Hammer to these, or any other, acts forming the basis of Plaintiff's claims. To the extent Plaintiff claims that Warden Hammer is liable under § 1983 as a supervisor, he has failed to state a claim because his Complaint includes no factual allegations showing that Warden Hammer directly participated in any constitutional violation, or failed to train or supervise any subordinate official who caused a violation after receiving notice of a pattern of unconstitutional acts committed by that subordinate. *See Brockington v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) ("A supervisor may be held liable under § 1983 if he directly participates in the

constitutional violation or if he fails to train or supervise the subordinate who caused the violation."); *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (explaining that supervisory liability attaches where the supervisor received notice of a pattern of unconstitutional acts and demonstrated deliberate indifference to or gave tacit authorization of those acts, and failed to take sufficient remedial action). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability" under such a theory. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (explaining that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement).

Plaintiff appears to try to overcome this problem with his Complaint by his "Motion to Accept and Consider the Defendants Steve Hammer and Steve Hout." (Doc. No. 7.) In this motion he asserts that Warden Hammer and Director Hout "were made aware of the constitutional violations to plaintiff by way of grievances, appeals, letters, and subordinates such as the defendant Jennifer Lynne Coolidge . . . and were in a position to do something about the matter but chose not to." (*Id.* at 2.) Further, he asserts that Warden Hammer and Director Hout "failed to supervise, intervene, or respond to grievances from Plaintiff and several other inmates who complained about same or similar constitutional violations in accordance with defendant Jennifer Lynne Coolidge's cruel and unusual punishment, misuse, and abuse of authority." (*Id.*)

The Court will liberally construe this "motion" as an attempt by Plaintiff to amend his Complaint to add these additional allegations to his pleadings. Indeed, these allegations appear to be a response to the Court pointing out in its November 24, 2014 Order that Plaintiff likely would not survive an initial screening of his Complaint because he had insufficiently pleaded facts to state a claim against Warden Hammer based on supervisory liability. Even construing

5

these additional allegations as part of Plaintiff's Complaint, however, Plaintiff has still failed to

state a claim for supervisory liability against Warden Hammer. The statements in Plaintiff's

motion are nothing more than conclusory assertions. Neither the averments in this motion, nor

the exhibits to which he cites in that motion (Doc. No. 2-1, Exs. A–F), are sufficient non-

conclusory factual statements that indicate Warden Hammer's personal responsibility or

involvement in the events forming the basis of Plaintiff's claims to show that Warden Hammer

was deliberately indifferent to or tacitly authorized the alleged discriminatory acts of Director

Coolidge. *See Livers v. Schenck*, 700 F.3d 340, 355–56 (8th Cir. 2012) (explaining that a

supervisor may be liable under § 1983 "if he (1) had notice of a pattern of unconstitutional acts

committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts;

and (3) failed to take sufficient remedial action; (4) causing injury to [the plaintiff].") (internal

quotations omitted); *Hill v. Anderson*, No. 06-cv-4497 (PJS/JJG), 2998 WL 31998, at *4 (D.

Minn. Feb. 5, 2008) ("Where a prisoner alleges that a warden has not adequately supervised

staff, but does not allege particular facts showing deliberate indifference or tacit authorization of

constitutional violations, the prisoner has no cause for relief against the warden."); *Croskey v.

County of St. Louis*, No. 4:14CV00867 ERW, 2014 WL 3956617, at *5–6 (E.D. Mo. Aug. 13,

2014) (concluding that the plaintiff failed "to allege specific non conclusory facts sufficient to

raise a claim against" a physician where the complaint failed to identify the individual as a

supervisor or policy maker and did not "indicate any personal responsibility or involvement

constituting deliberate indifference"). Nor do any of these conclusory allegations in Plaintiff's

motion establish a plausible claim that Warden Hammer had notice that inadequate training

procedures and supervision would likely result in Director Coolidge violating Plaintiff's constitutional rights. *See Livers*, 700 F.3d at 355–56.[2]

For these reasons, the claims against Warden Hammer should be dismissed.

## II.      Claims Against MSOP Director Hout

In its November 24, 2014 Order addressing Plaintiff's original IFP application, the Court also noted that Plaintiff's claims against Director Hout lacked sufficient description of what Director Hout allegedly did to violate Plaintiff's constitutional rights. (Doc. No. 6 at 4–5 n.3.) As with the claims against Warden Hammer, Plaintiff has failed to state a claim against Director Hout, and he should be dismissed from this case.

Plaintiff appears to believe that Director Hout is liable for Director Coolidge's conduct because he "held rank at the Department of Corrections Minnesota State Prison, Rush City." (Compl. 14, ¶ 33.) But to the extent he seeks to hold Director Hout liable for the acts of a subordinate under a supervisory liability theory, he fails to state a claim for the same reason that he could not state a claim against Warden Hammer. *See Brockington*, 503 F.3d at 674 (8th Cir. 2007) ("A supervisor may be held liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation.").[3]

---

[2]      Given that Plaintiff's claims against Warden Hammer and Director Hout should be dismissed, Plaintiff's motion to accept and consider Warden Hammer and Director Hout as Defendants (Doc. No. 7) should be denied.

[3]      Because Plaintiff's motion to accept and consider Warden Hammer and Director Hout as Defendants contains nothing more than conclusory allegations (Doc. No. 7), even considering those allegations as part of Plaintiff's pleading, he has failed to state a supervisory liability claim against Director Hout for the same reasons he failed to state such a claim against Warden Hammer. *See* discussion, *supra*, Part I, p. 5–7.

Otherwise, the only allegation against Director Hout is that he failed to respond to Plaintiff's grievance relating to Director Coolidge's conduct. (Compl. 12, ¶ 28.) But Plaintiff has failed to show that such a failure to respond to a prison grievance deprived him of his constitutional rights. Plaintiff has not pleaded facts that "would show that he had a protectable 'liberty' or 'property' interest in receiving an answer to his internal prison grievance." *Ouzts v. Cummins*, 825 F.2d 1276, 1278 (8th Cir. 1987) (per curiam); *see Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner . . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Even if Plaintiff is claiming that Director Hout failed to comply with the grievance policies applicable at a state correctional facility, that would not amount to a violation of any federal constitutional rights. *See Bonner v. Federal Bureau of Prisons*, 196 Fed. App'x 447, 448 (8th Cir. 2006) (stating that the prisoner failed to state a constitutional claim when he did not challenge the constitutionality of prison regulations, but only the manner in which the regulations were followed by prison officials); *McClinton v. Ark. Dep't of Correction*, 166 Fed. App'x 260, 260–61 (8th Cir. 2006) ("[A]ny contention that defendants failed to follow prison policy does not by itself state a claim.").

Accordingly, Plaintiff has failed to state a claim on which relief can be granted against Director Hout and his Complaint should be dismissed.

## III.   Claim Regarding Prison Mail Plaintiff Sent to Another Inmate

Plaintiff also makes an allegation that a letter he sent to another inmate in the Sex Offender Treatment Program was "intercepted by staff and never reache[d] its destination."

(Compl. 10, ¶ 21.) Plaintiff has failed to state any claim for which relief can be granted relating

to this incident because he has not allege any Defendant's personal involvement in this event.

*See Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (concluding that the plaintiff's § 1983

claim that the defendants deprived him of property without due process of law failed because the

plaintiff did not allege sufficient personal involvement by any of the defendants). Accordingly,

this claim should also be dismissed for failure to state a claim on which relief can be granted.

## IV.    Conclusion

For the reasons discussed above, this Court finds that Plaintiff's Complaint fails to state

an actionable § 1983 claim against any of the named Defendants, with the possible exception of

Director Coolidge. The Court will therefore recommend that this action be summarily dismissed

pursuant to 28 U.S.C. §§ 1915(e) and 1915A(b) as to Warden Hammer and Director Hout. The

Court will defer any ruling on the adequacy of Plaintiff's allegations against Director Coolidge,

and Plaintiff will be allowed to pursue his claims against Director Coolidge at this time, without

prejudice to any defenses she may seek to raise in this matter.

## RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's claims against Defendants Steve Hammer and Steve Hout be

summarily **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)

and 28 U.S.C. § 1915A(b)(1), and Defendants Steve Hammer and Steve Hout be dismissed from

this action as Defendants;

2.    Plaintiff's Motion to Accept and Consider the Defendants Steve Hammer and

Steve Hout (Doc. No. 7) be **DENIED**; and

3.       Plaintiff's claims concerning the confiscation of a piece of prison mail he sent to another inmate be summarily **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

Dated: March 23, 2015

_s/ Becky R. Thorson_____
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 6, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.